IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL A. MANNERS ) | |
| ) | |
| v. ) | No. 3:09-1092 |
| ) | Judge Wiseman/Bryant |
| SOCIAL SECURITY ADMINISTRATION ) | |

To:   The Honorable Thomas A. Wiseman, Jr., Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration"), through its Commissioner, denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), as provided under the Social Security Act ("the Act").  The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 13), to which defendant has responded (Docket Entry No. 17).  Upon consideration of these papers and the transcript of the administrative record (see Docket Entry No. 10),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED, and that the decision of the SSA be AFFIRMED.

### I.  Introduction

Plaintiff filed his SSI and DIB applications with the agency in 2006, alleging

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

disability onset as of August 3, 2006, due to severe back and leg pain and resulting limitations. (Tr. 140) Plaintiff's claim to these benefits was denied at the initial and reconsideration stages of agency review, whereupon plaintiff requested a de novo hearing before an Administrative Law Judge ("ALJ"). The ALJ hearing was held on January 29, 2009, and plaintiff appeared with counsel and gave testimony. (Tr. 18-34) Testimony was also received from an impartial vocational expert retained by the government. At the conclusion of the hearing, the ALJ took the matter under advisement, until April 15, 2009, when he issued a written decision denying plaintiff's claim. (Tr. 10-17) The decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 1, 2010.

2. The claimant has not engaged in substantial gainful activity since August 3, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairment: chronic low back pain syndrome (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light to sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b) except for crawling, more than occasional stooping, kneeling or crouching, pushing and pulling with his upper and lower extremities and the need to sit or stand at will. He is unable to perform work around moving or dangerous machinery, unprotected heights or around electrical shock. He is unable to perform sustained detailed work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on January 1, 1977 and was 29 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 3, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-13, 15-16)

On September 9, 2009, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c)(3). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record[2]

---

[2]It is noted that both parties refer to evidence that was not before the ALJ, but was submitted for the first time to the agency on appeal from the ALJ's decision. Because the ALJ's decision was not

Born January 1, 1977, plaintiff was 29 years old on the date of his alleged disability onset. (Tr. 22, 112) He did not attend high school but obtained his GED. (Tr. 21, 152)

Plaintiff suffered an injury to his lower back in 2004, and after failing conservative treatment, underwent a lumbar laminectomy on June 13, 2005. This surgery was performed by his treating neurosurgeon, Dr. Scott Standard. (Tr. 236, 242-43) After initially reporting great relief of symptoms post-surgery, plaintiff re-aggravated his lower back injury while changing a tire on his wife's car in early July 2005. (Tr. 239) On July 29, 2005, after physical therapy (Tr. 240-41), plaintiff was released to return to work on August 1, with no lifting over 35 pounds and driving off-road vehicles only at slow speeds (Tr. 244-45).

Plaintiff was next seen in Dr. Standard's office for a followup appointment on September 16, 2005, when nurse practitioner Julianne LaGasse noted that he complained of feeling a bit worse, though straight leg raise testing was positive on the left at fifteen degrees, but physical exam was otherwise normal. Medications were prescribed and further followup was scheduled. (Tr. 246) On October 14, 2005, Nurse LaGasse noted that plaintiff reported doing well at work and overall, and stated that he was to follow up as needed due to symptoms. (Tr. 247)

Over nine months later, on July 7, 2006, plaintiff presented at the emergency room at Trinity Hospital with back and left leg pain. He was noted to have an antalgic gait

---

disturbed by the Appeals Council and became the "final decision" of the SSA under the Social Security Act, 42 U.S.C. § 405(g), evidence that was not before the ALJ may not be considered by this court on judicial review. Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 149 (6th Cir. 1996). Accordingly, the evidence of record from Drs. Kent and Rubinowicz is not reviewed or considered here.

and some parasthesias, but was discharged on the same day with prescription medication and instructions to return to Dr. Standard or the emergency room as needed for exacerbations of pain. (Tr. 258-65)

A month later, on August 2, 2006, plaintiff was again seen in the emergency room complaining of acute pain that had started three days earlier. Plaintiff arrived at the hospital in a wheelchair, claiming that he was in too much pain to walk. Plaintiff was treated with injections of Toradol and Phenergan. He was noted by the physician to have at worst moderate symptoms, and his lumbar range of motion was normal. It was also noted that plaintiff smoked two packs of cigarettes per day and drank 2-3 beers per day. His symptoms improved and plaintiff was released in stable condition. (Tr. 220-21)

The next day, August 3, 2006, is the date of plaintiff's alleged disability onset, when he stopped working.

On October 9, 2006, plaintiff returned to Dr. Standard's office, where Nurse LaGasse treated him. He was noted to have no insurance since quitting work, and to complain of severe low back pain with left hip pain and posterior leg pain to the feet, as well as some groin pain. Nurse LaGasse found that he was able to heel and toe stand, and neurologically, had normal reflexes but diminished sensation in an L5 distribution. Straight leg raise testing elicited pain is the low back and hip. Nurse LaGasse prescribed the narctoic Lortab 5 and the muscle relaxer Soma, and stated that plaintiff needed an MRI as soon as he was able to acquire insurance. She directed him to follow up with Dr. Standard's office in three months. (Tr. 340)

On February 17, 2007, plaintiff underwent a consultative examination at government expense, performed by Dr. Jerry Lee Surber. Dr. Surber found that plaintiff had

5

"1-2/4+ palpable tenderness of the left greater than right L1-L5 paravertebral musculature and no muscle spasm present, with flexion at 90 degrees, extension and right and left lateral flexions all at about 5 degrees." (Tr. 321) Plaintiff complained of left lower back pain with straight leg raise testing. Dr. Surber's clinical impressions were these:

1. Shortness of breath on minimal exertion with no chest pain consistent with ongoing and progressive chronic obstructive pulmonary disease. The patient is continuing to smoke two or more packs of cigarettes per day which he states he has done for the last 14 or more years showing no evidence today of having any central or peripheral cyanosis. The patient states he has never used any type of inhalers.

2. History of alcohol use and possible abuse. The patient denies any jaundice, seizures or withdrawal syndrome. He denies any liver problems or abdominal pain.

3. Pain all worse in cold or rainy weather, accompanied by stiffness and fatigue; the patient is complaining today of pain in his neck, both of his shoulders and in his left greater than right lower back which he states radiates down the posterior aspect of his left leg. The patient had a moderate limitation regarding the mobility of his lower back but no limitations regarding the functional mobility of any of his other areas of complaint, nor in any of his extremities or joints during today's examination. He exhibited a limping antalgic gait toward the left and did appear to be weaker when standing on his left compared to his right leg. He had no areas of decreased sensation to light touch involving his hands or his feet. He had complained of constant numbness, burning and tingling in his left leg and foot. He used no type of assistive device during this examination today.

(Tr. 322) Dr. Surber offered the following functional assessment of plaintiff:

> Based on this patient's physical examination today with no medical records available for review, the patient would be able to occasionally lift or carry at least 10-20 pounds during up to 1/3 to 2/3 of an 8-hour workday. He would be able to stand or walk with normal breaks for up to 2 to possibly 4 hours in an 8-hour workday or he would be able to sit up to 6-8 hours in an 8-hour workday.

(Tr. 323)

Plaintiff next returned to Dr. Standard's office on April 11, 2007. Dr. Standard recorded the following note of this office visit:

> He continues to have left leg pain. I have given him more medications and will try to get a MRI scan through. He has not applied for TennCare which I think he would probably qualify. He is also applying for disability which I will support. We will see him back in six to eight weeks to continue to try to move the process forward. I think just a modest amount of Lortab, maybe 30-40 a month, would be reasonable.

(Tr. 338) Dr. Standard assessed plaintiff on this date as being limited to lifting/carrying ten pounds occasionally and less than ten pounds frequently; to standing/walking less than 2 hours in an 8-hour workday; and, to sitting less than 4 hours in an 8-hour workday. (Tr. 334-35)

Two nonexamining physicians retained by the government reviewed plaintiff's medical file in 2007, and both opined that plaintiff could perform light work. (Tr. 324-31, 397-404)

Plaintiff's next medical treatment was in March 2008, when plaintiff went to the emergency room complaining of flu symptoms, lower back pain, and left shoulder pain. On examination he did not have any palpable lower back tenderness, but did have left hip tenderness. (Tr. 407) An x-ray of plaintiff's left hip/pelvis returned normal results, with no fracture, full range of motion, and no arthritic changes. (Tr. 408)

On October 3, 2008, plaintiff was seen by nurse practitioner Christa Blaine at For Your Family Health clinic. On examination, Nurse Blaine reported normal gait and normal muscle tone and strength, but decreased range of motion with back flexion, extension, and lateral flexion. (Tr. 410) Plaintiff also reported trouble sleeping, and was

7

diagnosed with insomnia. Nurse Blaine prescribed Ambien for the insomnia, and referred plaintiff back to Dr. Standard for his back pain. (Tr. 411)

At the ALJ hearing on January 29, 2009, plaintiff testified that his pain is constant unless he's taking ibuprofen or something, and that he experiences pain in his left side all the way down to his toes, and up into his shoulders if he raises his arms. (Tr. 30) He testified that if he were able to stand or sit when needed during a workday, he could work one day and then would need to lay down for two days. (Tr. 29-30) He has tried heating pads, ice packs, and massagers for relief of his pain, but nothing has worked. (Tr. 30) He can sit comfortably for up to an hour and a half, but then has to lie down for three to five hours, which he does every day. (Tr. 27-28)

In agency paperwork supporting his benefits application, plaintiff stated that most of his days were spent lying back in a recliner while browsing the internet on his computer, or lying on the couch watching television. He gets up to drive his truck to the convenience market for cigarettes and a drink, or to visit friends when he is bored. He stated that he does no household chores, does not cook for himself, and cannot bathe his legs and feet or put on socks and shoes. He stated that he was limited to lifting 20 pounds or less, and that he wore a back brace to prevent further injury. (Tr. 131-38)

The vocational expert testified at the hearing, in response to the ALJ's questioning, that a person limited to work between the light and sedentary exertional levels, who had occasional postural and environment limitations and must be able to sit or stand at will, could be expected to perform work as a cashier (502,000 light jobs nationally), information clerk (76,000 light jobs and 102,000 sedentary jobs nationally), and food/beverage clerk (192,000 jobs nationally). (Tr. 32-33) She also testified that, other than

8

the inclusion of a sit/stand option, her testimony as to the availability of these jobs was consistent with the information provided in the Dictionary of Occupational Titles. (Tr. 33)

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

#### B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are

9

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not

direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

## C. Plaintiff's Statement of Errors

Plaintiff first alleges that the ALJ erred by drawing negative inferences about plaintiff's condition due to his lack of medical treatment, arguing that after he lost his employer-sponsored health insurance, he could not afford medical treatment or prescription pain medication.[3] The ALJ faults plaintiff for not finding "some way to obtain medical treatment and [prescription] medication as there are programs which enable individuals to obtain medical treatment free or at low cost." (Tr. 14-15) Regardless of an individual's responsibility to seek other, less expensive avenues in his quest for pain relief, rather than standing pat with the physicians he is familiar with but can rarely visit because of the prohibitive cost, it would appear that plaintiff could at least have afforded the modest

---

[3]Plaintiff evidently declined Dr. Standard's advice in 2007 to apply for TennCare coverage. (Tr. 338)

amount of prescription medication he needs (Tr. 338), if not more frequent office visits, had he not been spending his money buying two packs of cigarettes per day (which he did for the duration of the period under consideration) and 2-3 beers per day (which he did for at least part of the period under consideration), not to mention his internet service subscription. (E.g., Tr. 211, 217, 235, 319, 410)   The Sixth Circuit in <u>Sias v. Sec'y of Health & Human Servs.</u>, 861 F.2d 475, 480 (6th Cir. 1988), took judicial notice of the monetary cost of a two pack per day smoking habit, offset against the claimant's professed inability to afford appropriate medical treatment, and found the claimant's argument lacking, concluding that he essentially chose cigarettes over pain relief.  The same may be said in this case.  The undersigned thus finds no error in the ALJ's view of the limited medical evidence as undermining the credibility of plaintiff's claim of intractable pain.

        Plaintiff next argues that the ALJ erred in not giving controlling weight to the April 2007 assessment of his treating physician, Dr. Standard.  A treating source opinion is entitled to controlling weight pursuant to 20 C.F.R. § 404.1527(d)(2) if it is well supported by objective, clinical evidence and not substantially opposed on the record.  Even where such an opinion is not entitled to controlling weight, the Sixth Circuit has stated that "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference. . . ." <u>Rogers v. Comm'r of Soc. Sec.</u>, 486 F.3d 234, 242 (6th Cir. 2007).  Accordingly, ALJs must provide "good reasons" for discounting the weight of a treating source opinion.  <u>See</u> 20 C.F.R §§ 404.1527(d)(2), 416.927(d)(2); <u>Rogers</u>, 486 F.3d at 242.  In this case, the ALJ declined to give weight to Dr. Standard's bleak assessment of plaintiff's functional ability because "[h]is opinion is unsupported and inconsistent with

12

objective findings of record including his own office notes." (Tr. 15) Substantial evidence supports this reasoning. Dr. Standard's office notes reflect that plaintiff complained of severe back, hip, leg, and groin pain in an October 2006 visit with Nurse LaGasse, who prescribed Lortab 5 for pain relief. (Tr. 340) Thereafter, plaintiff did not return for medical care until April 2007, when he complained of leg pain and Dr. Standard prescribed "just a modest amount of Lortab, maybe 30-40 a month" and scheduled him for followup in six to eight weeks. (Tr. 338) These office notes would appear to support an assessment of moderate pain and resulting limitations, not the checkbox assessment wherein Dr. Standard identified severe lifting and sitting/standing limitations without providing any findings or other explanation in support of that assessment. (Tr. 334-35)

Contrary to Dr. Standard's unexplained assessment of disabling limitations, the other physicians of record, including consultative examiner Surber, assigned restrictions in keeping with the demands of a range of light exertional work. (Tr. 319-23, 324-31, 397-404) In light of plaintiff's infrequent visits to Dr. Standard, the lack of objective test results or more aggressive measures by Dr. Standard to control plaintiff's pain, and the other medical reports which credit plaintiff's left-sided pain and antalgic gait, but not to a disabling extent, the undersigned finds no error in the ALJ's rejection of Dr. Standard's April 2007 assessment. Rather, the record as a whole reflects substantial evidentiary support for the ALJ's assignment of a residual functional capacity for light to sedentary work with an option to sit or stand at will, as well as other postural, pushing/pulling, and environmental limitations. (Tr. 13)

The undersigned likewise finds no merit in plaintiff's remaining claims of

13

error.  He argues that light and sedentary positions cannot accommodate the need for a sit/stand option, but the authorities plainly allow for the possibility of a sit/stand option during the performance of such work, and for the vocational impact of such accommodation in relevant markets to be determined by consulting a vocational expert.  See, e.g., Sharp v. Barnhart, 152 Fed. Appx. 503, 506-07 (6th Cir. Oct. 26, 2005), and Bennett v. Astrue, 2008 WL 345523, at *5-6 (W.D. Ky. Feb. 7, 2008) (citing, e.g., SSR 83-12).

Moreover, no conflict requiring further administrative action was created by the vocational expert's testimony that her identification of jobs was consistent with the Dictionary of Occupational Titles ("DOT") other than with respect to allowance for a sit/stand option.  While the DOT does not recognize any particular job's amenability to a sit/stand option as such, it has been held that no conflict between the testimony of the expert and the DOT is created by the mere imposition of a sit/stand option, such that would require resolution by the ALJ in order to pass muster.[4]  E.g., Walton v. Comm'r of Soc. Sec., 2009 WL 2905952, at *9 (E.D. Mich. Sept. 8, 2009) ("[B]y testifying as to the frequency of jobs providing a sit/stand option, it appears as though the VE was supplementing information in the DOT, and not providing conflicting information.") (citing Baranich v. Barnhart, 128 Fed. Appx. 481, 486 n.3 (6th Cir. Apr. 19, 2005) ("[Claimant] is therefore incorrect to argue that the ALJ could not include a sit/stand option when such an option is not indicated in the DOT, as the DOT is only one source to be used in assessing the availability of jobs for the

---

[4]Social Security Ruling 00-4p requires the ALJ to ask the vocational expert on the record about any conflicts with the DOT, obtain a reasonable explanation for any conflict, and explain the resolution of any conflict before relying upon the expert's testimony.  2000 WL 1898704 (S.S.A. Dec. 4, 2000).

claimant.").

Finally, as referenced above, the credibility of plaintiff's subjective complaints was properly considered against his limited motivation to seek medical treatment from his treating sources or emergency room treatment, as well as his use of only over-the-counter pain medication and the weight of the medical assessments of record. (Tr. 14-15) Thus, while the ALJ found plaintiff to be significantly limited by his back pain, he appropriately discounted plaintiff's credibility to some degree after finding conflicts among the medical reports, plaintiff's testimony, and other evidence of record. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 532 (6th Cir. 1997). This credibility finding is due great weight and deference on judicial review, Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003), and no grounds for setting it aside appear from the ALJ's decision or the evidentiary record in this case.

In sum, the undersigned finds substantial evidence supporting the findings of the ALJ that plaintiff was limited by his back impairment to such an extent that he could not perform his prior work, but that a significant number of other jobs which plaintiff could perform existed in the national economy, justifying the denial of his claim to benefits.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and

Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 2nd day of March, 2011.

s/ John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE